OPINION
{¶ 1} Clayton Williams was convicted by a jury in the Clark County Court of Common Pleas of failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331(B), and vandalism, in violation of R.C. 2909.05(B)(2). He was acquitted of one count of felonious assault. Williams was sentenced to five years of imprisonment for the failure to comply and to one year for the vandalism, to be served consecutively.
 {¶ 2} Williams appeals from his convictions and sentence, raising three assignments of error.
 {¶ 3} I. "THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF FAILURE TO COMPLY OR VANDALISM."
 {¶ 4} II. "THE JURY VERDICT SHOULD BE REVERSED BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE."
 {¶ 5} In his first and second assignments of error, Williams claims that his convictions for failure to comply and vandalism were based on insufficient evidence and were against the manifest weight of the evidence.
 {¶ 6} "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, citing Black's Law Dictionary (6th Ed. 1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis,79 Ohio St.3d 421, 430, 1997-Ohio-372, 683 N.E.2d 1096, citingJackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 7} In contrast, when a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, 20 Ohio App.3d at 175.
 {¶ 8} According to the state's evidence, at approximately 1:00 p.m. on June 16, 2005, Clayton Williams was driving a gray Town and Country in Springfield, Ohio, with Ann Brag. Williams was a friend of Brag's former boyfriend, Daniel Miller. According to Brag, the pair had gone to Accu Source and Manpower to complete or check on employment applications. After leaving Manpower, Williams headed toward Brag's home on Cedar Street.
 {¶ 9} As they were driving on Plum Street, Williams saw the police. Brag stated that he sped up and hurried around the corner. She further indicated that, upon circling back to Plum Street, Williams noticed that the "cops were there[,] so they followed him through Snyder Park and he kept going around in circles." Brag testified that Williams said "he was running, he wasn't stopping." According to Brag, the police had not activated their lights, but they had put on their sirens. Detective Douglas Estep, who was involved in the attempt to stop Williams, testified that he observed marked patrol cars behind Williams with their lights and sirens on. It was clear to Brag that the officers activated their sirens to signal for William to pull over. She testified that there was "no chance" that Williams did not hear the police cars or notice them.
 {¶ 10} For approximately ten minutes, Williams continued to circle through the City of Springfield while Brag requested to be let out of the car. During this time, Williams went up one-way streets, ran stop lights and signs, and drove at an excessive speed. Brag stated the tires squealed "up the hill through Snyder Park, down Cedar Street, on Plum Street" while he turned corners. Detective Estep observed one automobile accident at an intersection and several near-misses. Williams let Brag out of the car on Yellow Springs Street.
 {¶ 11} Soon thereafter, the pursuit of Williams' vehicle was called off by the captain. The police officers remained in the area, however, in case Williams were to circle back. Williams' vehicle continued south on Yellow Springs Street.
 {¶ 12} Shortly afterwards, Detective Estep got behind Williams while he was traveling westbound on High Street. When Williams stopped at the traffic light at Dayton Road, Estep pulled his car beside the driver's side of Williams' vehicle. A civilian car stopped behind Williams. Officers John McCoy and Rick Fleming, who were traveling in a "paddy wagon," also approached Williams from behind. After making eye contact with Williams, Estep pulled his vehicle in front of Williams so that it was approximately perpendicular to Williams' car. At the same time, McCoy drove his police vehicle along the driver's side of Williams' vehicle to where Estep had just been.
 {¶ 13} Estep began to step out of his vehicle. According to Fleming, Williams then rammed Detective Estep's vehicle and "tr[ied] to push him out to the intersection." Williams' car moved Estep's car a couple of feet upon contact. Williams put his car in reverse, and the civilian car behind him backed out of the way. Williams then backed up, hitting the paddy wagon's wheel. He then turned around and drove eastbound on High Street. Estep and Fleming identified Williams as the individual who had hit Estep's car.
 {¶ 14} Williams argues that the state failed to present evidence on each of the elements of failing to comply with an order of a police officer. R.C. 2921.331(B) provides: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." A violation of R.C. 2921.331(B) is a felony of the third degree if the fact-finder finds, beyond a reasonable doubt, that the operation of the motor vehicle by the defendant "was the proximate cause of serious physical harm to persons or property" or "caused a substantial risk of serious physical harm to persons or property." R.C. 2921.331(C)(5)(a).
 {¶ 15} .The state alleged that Williams' operation of the vehicle caused a substantial risk of serious physical harm to persons or property. Williams disagrees, stating:
 {¶ 16} "The chase allegedly occurred over a ten minute period divided by two incidents. The first chase had no origin and was called off. The second chase was the result of one detective creatively remaining in the area as a monitor. The detective was in an unmarked detective's car when he propositioned [sic] Appellant into an accident — a fender bender from which Appellant drove away. When Appellant drove away, there was no signal or order from police to stop. Thus, if the Failure to Comply charge relates solely to the first chase, then the State failed to establish a substantial risk of serious physical harm. The first chase ended with no physical harm; it was called off by the captain. After the accident, there was no testimony that Appellant failed to comply with a lawful order. Appellant drove away as he noticed a paddy wagon in his rear view mirror. Thus, Appellant could not have eluded the Springfield Police Department after committing a felony because he was not signaled to stop." (Citations omitted.)
 {¶ 17} Upon review of the record, we have no difficulty finding evidence to support Williams' conviction for failing to comply with an order or signal of a police officer. As stated above, Brag testified that police officers had activated their sirens and begun to follow Williams. Estep also testified that marked patrol cars were following Williams with their lights and sirens activated. It was clear to Brag, who was in the car with Williams, that the officers had turned on their sirens to signal for William to pull over. She testified that there was "no chance" that Williams did not hear the police cars or notice them. Moreover, Brag testified that Williams expressly stated that "he was running" and that "he wasn't stopping." Based on this evidence, the state presented substantial evidence that Williams willfully fled from police officers after receiving audible or visible signals to stop.
 {¶ 18} Moreover, the state presented evidence that Williams' conduct created a substantial risk of serious physical harm. Brag and the Springfield police officers testified that Williams committed several traffic violations while he was "running" from the police. Brag testified that Williams went up one-way streets, ran stop lights and signs, and was speeding. Estep testified that he observed Williams cause an accident and almost cause others. He stated that he first saw Williams as Williams turned westbound on North Street towards Western Avenue. At that point, he saw a collision of a car with another car that was parked at the intersection. Estep further testified that, while he was stopped by a laundromat on Yellow Springs Street between Columbia and North Street, he saw Williams almost hit a cruiser. Estep indicated that Williams later ran a red light at Columbia and Yellow Springs Street, and that a car going eastbound on Columbia slammed on its brakes to avoid him. In light of this testimony, the jury was presented with evidence to support its conclusion that Williams' operation of the vehicle caused a substantial risk of serious physical harm to persons or property. The state did not allege that Williams committed the offense of failure to comply with an order or signal of a police officer while he was fleeing immediately after the commission of a felony. See R.C.2921.331(C)(4). Accordingly, the state was not required to present evidence to that effect. Williams' conviction for failure to comply was neither based on insufficient evidence nor against the manifest weight of the evidence.
 {¶ 19} We likewise find that Williams' conviction for vandalism, in violation of R.C. 2909.05(B)(2), was based on sufficient evidence and was not against the manifest weight of the evidence. That statute provides, in relevant part: "No person shall knowingly cause serious physical harm to property that is owned, leased, or controlled by a governmental entity." "Knowingly" is defined in R.C. 2901.22(B): "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 20} The trial court charged the jury, without objection, using the definition of "serious physical harm to property" set forth in R.C. 2901.01(A)(6). That provision defines "serious physical harm to property" as physical harm to property that either (1) "[r]esults in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;" or (2) "[t]emporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time." Id. R.C.2909.05(F), however, defines "serious physical harm" as "physical harm to property that results in loss to the value of the property of five hundred dollars or more." We need not decide whether the trial court used the appropriate standard because, as discussed infra, the state's evidence was sufficient regardless of the definition that is used.
 {¶ 21} Williams asserts that the state failed to establish that he knowingly caused injury to a government-owned vehicle. He argues that Estep was operating a green unmarked Impala, that the damage done to the vehicle was minimal, and that there was no evidence regarding his state of mind. He notes: "if Appellant was so bold to lead the Springfield police department on a chase, then why would [he] obey a traffic light if he knew a green Impala was government property."
 {¶ 22} During the trial, Brag testified that, during the chase, she saw "a cop car and an undercover cop car" behind them. When asked how she knew it was an undercover officer, Brag stated that she could tell by "the lights in the front." Estep later testified that when he pulled beside Williams, he made eye contact with Williams to see if Williams would react. Estep then angled his car in front of Williams' vehicle to block his way. Estep and McCoy testified that Estep moved his vehicle perpendicular to Williams', "like a T." At this juncture, Williams "rammed" Estep's car, backed up, turned around, and proceeded eastbound on High Street.
 {¶ 23} Based on the evidence presented at trial, the jury could have reasonably concluded that Williams was aware that Estep was a police officer and that he was driving an unmarked car when he attempted to avoid being boxed in by Estep, McCoy and Fleming. Moreover, the jury could have reasonably concluded that he knowingly hit Estep's vehicle in his attempt to elude the police. Although the jury was not required to make such inferences and could have concluded that Williams did not knowingly damage a government-owned vehicle, we cannot conclude that the jury "clearly lost its way" in reaching its conclusion.
 {¶ 24} In addition, we cannot conclude that the state failed to present sufficient evidence that he inflicted "serious physical harm to property" and that the verdict was thereby against the manifest weight of the evidence. Although Estep's testimony indicated that his vehicle was still operable after the collision, the state presented photographs of Estep's vehicle after the collision, which showed damage to the right rear door and wheel well. Specifically, the photographs indicated a sizable dent on the lower portion of the door and the front part of the wheel well, as well as damage to the paint in those areas. Although Estep did not testify at trial how much the repairs would cost, the jury could have reasonably concluded, upon review of the photographs, that the damage to the vehicle would require a substantial amount of money to repair.
 {¶ 25} The first and second assignments of error are overruled.
 {¶ 26} III. "THE TRIAL COURT VIOLATED APPELLANT'S SIX[TH] AMENDMENT RIGHT TO A JURY TRIAL BY MAKING A FACTUAL DETERMINATION TO IMPOSE A SENTENCE BEYOND THE STATUTORY MINIMUM."
 {¶ 27} In his third assignment of error, Williams claims that he was unconstitutionally sentenced to maximum, consecutive sentences.
 {¶ 28} The Supreme Court of Ohio recently held that parts of Ohio's felony sentencing scheme are unconstitutional. State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. The unconstitutional provisions include R.C. 2929.14(B) and (C), R.C.2929.14(E)(4), and R.C. 2929.19(B)(2)(c). Following the United States Supreme Court's decisions in Apprendi v. New Jersey
(2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, andBlakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403, the Supreme Court of Ohio held in Foster that R.C.2929.14(E)(4) is unconstitutional because it "require[s] judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before imposition of consecutive sentences." Foster at ¶ 65-67, ¶ 83. The supreme court further held that R.C. 2929.14(B) and (C) and R.C. 2929.19(B)(2) are unconstitutional because they "require judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant." Id. at ¶ 83.
 {¶ 29} The supreme court severed the provisions that it found to be unconstitutional. Id. at ¶ 97. In light of this holding, trial courts now have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or to give their reasons for imposing maximum sentences. Id.; State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855,846 N.E.2d 1, ¶ 37. Moreover, judicial factfinding is no longer required before the imposition of consecutive prison terms.Foster at ¶ 99; Mathis, at ¶ 37.
 {¶ 30} Foster further instructed that all cases pending on direct review in which the unconstitutional sentencing provisions were utilized must be remanded for resentencing. At the sentencing hearing, the trial court "shall consider those portions of the sentencing code that are unaffected by [Foster] and impose any sentence within the appropriate felony range. If the offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively." Id. at ¶ 105.
 {¶ 31} The third assignment of error is sustained.
 {¶ 32} The sentence is reversed, and the matter is remanded for resentencing. The trial court's judgment is affirmed in all other respects.
Brogan, J. and Fain, J., concur.