[Cite as *State v. Stubbs*, 2024-Ohio-839.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,            :

      Plaintiff- Appellee,      :

                                No. 112781

          v.                 :

JAMES STUBBS,          :

      Defendant-Appellant.    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
**RELEASED AND JOURNALIZED:**  March 7, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-675521-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christopher Woodworth, Assistant Prosecuting Attorney, *for appellee.*

Patituce & Associates, LLC, Joseph C. Patituce, and Megan M. Patituce, *for appellant.*

MICHELLE J. SHEEHAN, J.:

**{¶ 1}** Defendant-appellant, James Stubbs ("James" or "Stubbs"), appeals from the trial court's judgment convicting him of vandalism and several drug-related charges and ordering him to forfeit $4,264 and a cell phone. Stubbs raises five assignments of error for our review.

> I. The State failed to present sufficient evidence to prove Mr. Stubbs's guilt as to Counts 11, 12, and 13 beyond a reasonable doubt.
>
> II. Mr. Stubbs's convictions were against the manifest weight of the evidence.
>
> III. The trial court erred in ordering the forfeiture of the money and cell phone, because not only was there insufficient evidence, but also the trial court had improperly instructed the jury as to the State's burden.
>
> IV. The trial court erred in admitting evidence regarding an unindicted rifle over defense objection.
>
> V. The trial court erred in failing to merge Counts 1, 2, and 3.

**{¶ 2}** After review, we find no merit to Stubbs's first four assignments of error and overrule them. However, we find merit in part to Stubbs's fifth assignment of error. Specifically, we agree with Stubbs that Count 3, possession, and trafficking under Counts 1 (sell or offer to sell) and 2 (prepare for shipment or distribution) are allied offenses of similar import, and therefore, possession should merge with either Count 1 or 2. But we do not agree that the trafficking offenses, Counts 1 and 2, are allied offenses of similar import. We therefore sustain Stubbs's fifth assignment of error in part and overrule it in part. We remand for merger and resentencing. We otherwise affirm the judgment of the trial court.

## I. Procedural History and Facts

{¶ 3} In October 2022, Stubbs was indicted on 13 counts, including five counts of trafficking, six counts of drug possession, one count of possessing criminal tools, and one count of vandalism. The state alleged that the offenses occurred between January 19, 2021, and January 28, 2021.

**January 19, 2021 Counts:**

Count 1, trafficking in violation of R.C. 2925.03(A)(1), a fifth-degree felony (sell/offer to sell less than 5 grams of cocaine).

Count 2, trafficking in violation of R.C. 2925.03(A)(2), a fifth-degree felony (prepare/distribute less than 5 grams of cocaine);

Count 3, drug possession in violation of R.C. 2925.11(A), a fifth-degree felony alleged to have occurred on different dates (less than 5 grams cocaine).

**January 23, 2021 Count:**

Count 4, drug possession in violation of R.C. 2925.11(A), a fifth-degree felony (less than five grams cocaine).

**January 28, 2021 Counts:**

Count 5, trafficking in violation of R.C. 2925.03(A)(2), a first-degree felony (100 times the bulk amount of phencyclidine ("PCP")), with major drug offender, schoolyard, and forfeiture specifications involving $4,264 and a cell phone;

Count 6, drug possession in violation of R.C. 2925.11(A), a first-degree felony (100 times the bulk amount PCP), with a major drug offender specification and two forfeiture specifications involving the same money and cell phone;

Count 7, trafficking in violation of R.C. 2925.03(A)(2), a first-degree felony (exceeds five hundred unit doses but is less than one thousand unit doses or equals or exceeds fifty grams but is less than one hundred grams fentanyl-related compound), with a schoolyard

specification and two forfeiture specifications involving the same money and cell phone;

Count 8, drug possession in violation of R.C. 2925.11(A), a first-degree felony (exceeds five hundred unit doses but is less than one thousand unit doses or equals or exceeds fifty grams but is less than one hundred grams fentanyl), with two forfeiture specifications involving the same money and cell phone;

Count 9, trafficking in violation of R.C. 2925.03(A)(2), a first-degree felony (50 to 100 grams heroin), with a schoolyard specification and two forfeiture specifications involving the same money and cell phone;

Count 10, drug possession in violation of R.C. 2925.11(A), a first-degree felony (50 to 100 grams heroin), with two forfeiture specifications involving the same money and cell phone;

Count 11, drug possession in violation of R.C. 2925.11(A), a fifth-degree felony (less than 5 grams of cocaine), with two forfeiture specifications involving the same money and cell phone;

Count 12, possessing criminal tools in violation of R.C. 2923.24(A), a fifth-degree felony (money with the purpose to use it criminally), with two forfeiture specifications involving the same money and cell phone; and

Count 13, vandalism in violation of R.C. 2909.05(B)(2), a fifth-degree felony.

{¶ 4} Stubbs pleaded not guilty to all charges, and the case proceeded to a jury trial in March 2023. The following evidence was presented at trial.

**A. Trial**

{¶ 5} Detective Nicholas Lombardi, a detective for the Third District Vice Unit of the Cleveland Police Department, was conducting surveillance of a known drug dealer near E. 78th Street and Cedar Avenue on January 19, 2021, when he observed a male standing beside a black Chevy Silverado in a parking lot. Detective

Lombardi saw people approach the male and make a "hand-to-hand * * * possible exchange" of something. After the exchange, the male would go to his truck for a brief time and then return to the person. The person and the male would make another "hand-to-hand" transaction, and the person would then walk away.

{¶ 6} Detective Lombardi and other officers followed the black Silverado in undercover vehicles to a convenience store on Pearl Road. Detective Lombardi asked a confidential informant ("CI") to purchase drugs from the male in the parking lot of the convenience store. Detective Lombardi searched the CI before and after the search, gave the CI money to purchase the drugs, and observed the transaction between the CI and the suspected seller. After the transaction, the CI returned to Detective Lombardi with $20 worth of crack cocaine and $20 worth of marijuana. The entire transaction lasted approximately 15 seconds. The CI told Detective Lombardi that the male had given the CI his phone number for future drug purchases and told the CI that he went by the name of "J-Bo." The male who sold the drugs then left the convenience store in the Silverado, and the undercover police officers followed him to a home on Willowdale Avenue. The officers observed the male enter the rear of the Willowdale home.

{¶ 7} Detective Lombardi ran the license plate of the truck; it was registered to Macio Stubbs ("Macio"). He showed a photo of Macio to the CI. The CI said that he did not purchase the drugs from Macio. Detective Lombardi did more research and learned that James Stubbs had lived at the home on Willowdale at one time. He

showed the CI a photo of James Stubbs, and the CI was able to identify him as the male who sold him the drugs.

{¶ 8} Detective Lombardi explained that he and other officers began surveilling the home on Willowdale because they were trying to determine whether drugs were being sold out of the home. Detective Lombardi said that James and Macio entered and exited the home several times on January 21, 2021. Detective Lombardi also saw James drive a black Jeep as well as the black Silverado to and from the Willowdale home that day.

{¶ 9} Detective Lombardi and other officers decided to collect the trash that was on the curb of the Willowdale home. They found mail addressed to James and Macio. They also found a plastic bag that contained white residue, which in fact later tested positive for cocaine.[1]

{¶ 10} Detective Lombardi obtained a search warrant on January 25, 2021, to search the Willowdale home. The officers planned to execute it on January 28, 2021.

{¶ 11} In the meantime, Detective Lombardi had been trying to set up another "controlled purchase from the individual known as J-Bo [using] the phone number" that J-Bo gave the CI. After several attempts, the CI, in Detective

---

[1] The cocaine residue found in the trash pull was what led to Count 4, drug possession in violation of R.C. 2925.11(A), that allegedly took place on January 23, 2021. The jury found Stubbs not guilty of this count.

Lombardi's presence, finally reached J-Bo at the phone number on January 28, 2021. The CI scheduled to meet J-Bo that day at the same convenience store where he had previously purchased the drugs from J-Bo.

{¶ 12} Detective Lombardi explained that the second controlled buy did not take place, however, because his sergeant decided to "takedown" the Silverado just before the CI was supposed to meet with J-Bo. Detective Lombardi explained that a "takedown" happens when officers place one police vehicle in front of a vehicle the officers are trying to contain and another behind it so that the driver cannot leave.

{¶ 13} Sergeant Matthew Nycz was parked in an unmarked vehicle across the street from the Wendy's on Pearl Road. He was told to monitor the Wendy's parking lot to watch for the black Silverado. He saw the Silverado pull into the Wendy's parking lot and broadcast it over the police radio to the detectives working on the case.

{¶ 14} Soon after the broadcast from Sergeant Nycz, Detective Ron Meyers and another officer parked their takedown vehicles in front of and behind the black Silverado in Wendy's parking lot. Detective Meyers explained that a takedown vehicle does not "have 'Police' written all over the side of it, but it does have red and blue flashing lights and sirens and it's got a push bar." He said it is "obviously a police car, it's just not as obvious."[2] Detective Meyers testified that he and the other

---

[2] Detective Meyers said that his takedown vehicle was a "black Crown Vic" but the photo exhibits that he identified as his takedown vehicle show that it was a Dodge Charger.

officer turned their lights on, jumped out of their vehicles, and ordered the two occupants, a male and a female, out of the black Silverado. Instead of complying, the driver "put [the truck] in reverse, smashed into the [takedown vehicle] behind him to make some room, and then pulled off." Regarding the condition of his takedown vehicle, Detective Meyers said that "it was a sad day, because it was a brand new takedown car [with] 1,500 miles on it," and the front of it "was banged up pretty bad." Detective Meyers identified four photos of the vehicle showing the damage.

{¶ 15} After the Silverado left the Wendy's parking lot, Sergeant Nycz watched it "proceed at a high rate of speed going south on Pearl Road." He began following the Silverado but lost sight of it when it turned onto Bradwell Avenue. Sergeant Nycz found the Silverado unoccupied and parked in a driveway on the "south side" of Bradwell Avenue, between W. 33rd and W. 34th Streets. He notified other officers and watched the Silverado to see if someone returned to it. Approximately 20 minutes later, he saw a male approach the truck from the "south side of the street," get in it, and drive west towards W. 34th Street. Sergeant Nycz notified other officers.

{¶ 16} Sergeant Nycz waited about ten minutes and then walked to the south side of the street near the driveway where the truck had been parked. He retraced the male's steps where he had seen him walking on the south side of the street. He could see one set of footsteps in the snow where the male had walked. Sergeant Nycz explained that in his experience, when people are trying to "evade police from being

apprehended with narcotics or a gun, they tend to throw things on the ground * * * so if they do get apprehended, they don't have it on them." Sergeant Nycz found a plastic bag with white residue in it (that later tested positive for cocaine) on the ground near where the male had walked and the truck had been parked. Sergeant Nycz explained that the ground was "snowy wet, like, slush" but the plastic bag was dry, which led him to believe that it had just been dropped.

{¶ 17} Sergeant Robert Norman responded to Sergeant Nycz's call regarding the Silverado heading west on Blackwell Avenue. Sergeant Norman saw the truck, stopped it, and arrested Stubbs. Sergeant Norman found $4,264 in Stubbs's possession, which was mostly in "smaller denominations," and confiscated two cell phones. Sergeant Norman gave the money and cell phones to Detective Lombardi.

{¶ 18} Detective Prebhairandip Singh and his partner responded to a police broadcast to watch for a female walking toward the home on Willowdale Avenue. The female had been a passenger in the Silverado. Detective Singh said that they saw a female matching the description near the location given and stopped her. The female was Alice Wadee, the sister of Macio and James. Detective Singh stated that as soon as Wadee saw the officers, she immediately started "tearing at her chest" or reaching for her bra, "almost like she was tearing open something." Detective Singh could see "powdery stuff" scatter from "exactly where she was reaching and tearing." Detective Singh explained that they "later discovered that she was trying to destroy the narcotics that were in her blouse." Wadee's clothes testified positive for heroin

and fentanyl residue. Other officers searched Wadee and recovered the narcotics that were on her person, which amounted to 94.57 grams of heroin, fentanyl, and 4-ANPP (a Schedule II drug). Wadee testified that she pleaded guilty to trafficking heroin.

{¶ 19} Detective Lombardi stated that approximately one hour after Stubbs was arrested, he and other officers executed the search warrant on the Willowdale home. They used a key obtained from Stubbs when he was arrested to enter the home. The officers found a digital scale with residue on it in the main bedroom (Macio and his then-girlfriend's bedroom), which turned out to be cocaine and marijuana residue. They also found a box of sandwich bags in the main bedroom, a Draco firearm in the basement rafters, marijuana, a vile of heroin, a plastic bag containing fentanyl and heroin, and two large bottles of PCP weighing over 3,100 grams in a trash can outside behind the home.

{¶ 20} Detective Lombardi interviewed Stubbs. Stubbs admitted that he "stayed" at the Willowdale home at one point but had not been there in over a year except to drop Macio off at the home.

**B. Jury Verdict and Sentence**

{¶ 21} The jury found Stubbs guilty of Counts 1, 2, 3, 11, 12, and 13 and not guilty of the remaining counts. The trial court sentenced Stubbs to 12 months in prison on each of Counts 1, 2, and 3 and ordered that they be served concurrent to each other. The trial court also sentenced Stubbs to 12 months in prison for each of Counts 11, 12, and 13 and ordered that they be served concurrent to each other. The

trial court then ordered Stubbs to serve Counts 1 and 11 consecutive to one other for a total of 24 months in prison.  It is from this judgment that Stubbs now appeals.

## II. Sufficiency of the Evidence

{¶ 22} In his first assignment of error, Stubbs argues that his convictions for Counts 11, 12, and 13 were not supported by sufficient evidence.  In Counts 11, 12, and 13, Stubbs was convicted of drug possession, possessing criminal tools, and vandalism.

{¶ 23} When considering a challenge to the sufficiency of the evidence, we review the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*  A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction."  *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

### A. Drug Possession

{¶ 24} For drug possession under R.C. 2925.11(A), the state was required to prove that Stubbs "knowingly obtain[ed], possess[ed], or use[d] a controlled substance or a controlled substance analog."  Specifically, in Count 11, the state

alleged that Stubbs possessed less than five grams of cocaine on or about January 28, 2021.

{¶ 25} Count 11 involved the plastic bag of white residue that Sergeant Nycz found on the ground near where the Silverado had been parked in the driveway on Bradwell Avenue. Stubbs argues that because Sergeant Nycz "did not see anyone drop" the plastic bag, that "any number of people could have dropped" it. We disagree that the state presented insufficient evidence on this count. Sergeant Nycz testified that after he saw the male get in the truck and drive away, he walked to where the truck had been parked. He found a plastic bag with white residue, that later testified positive for cocaine, on the ground near where the truck had just been parked and near where the male had just walked. Sergeant Nycz explained that the bag appeared to have been "freshly dropped" on the pavement because the bag was dry, but the ground was wet. Other officers stopped the Silverado soon after it left the driveway, and Stubbs was driving it. This is sufficient evidence, if believed, that Stubbs possessed the plastic bag with cocaine residue in it.

**B. Possession of Criminal Tools**

{¶ 26} Stubbs contends that the state failed to present sufficient evidence to find him guilty of criminal tools for the $4,264 found on Stubbs's person when he was arrested. Stubbs argues that "[m]oney, in and of itself, is not a criminal tool," and that the state failed to present "evidence that the money in question was used to facilitate drug transactions." He maintains that the state attempted to facilitate a "controlled buy" on January 28, 2021, but did not execute it because of the takedown

attempt. He therefore contends that the state did not prove beyond a reasonable doubt that the money was connected to any drug transaction. We disagree.

{¶ 27} Under the relevant statute, R.C. 2923.24(A), the state had to prove that Stubbs "possess[ed] or [had] under [his] control any substance, device, instrument, or article, with purpose to use it criminally." Prima facie evidence of criminal purpose includes "[p]ossession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use." R.C. 2923.24(B)(3).

{¶ 28} Although the police did not complete the controlled drug purchase on January 28 because of the attempted takedown, they knew that Stubbs was going to be in that area at that time because of the scheduled controlled buy. The CI had scheduled the January 28 controlled buy by calling the phone number that Stubbs had given the CI at the controlled buy that took place nine days earlier.[3] Therefore, Stubbs was at the Wendy's parking lot just before he was supposed to meet the CI at the convenience store across the street to sell the CI drugs.

{¶ 29} Further, when officers stopped the Silverado and subsequently arrested Stubbs, they confiscated two cell phones and $4,264, which was mostly in small denominations. Although the police did not find drugs on Stubbs's person or

---

[3] The CI identified Stubbs as J-Bo, the man who sold him the drugs on January 19, when Detective Lombari showed him Stubbs's photo.

in the Silverado, they found a plastic bag with cocaine residue on the ground near where the Silverado had been parked soon after the attempted takedown.

{¶ 30} This court has held that when the state demonstrates a defendant is in possession of a large amount of money in small denominations, the fact that it was in small denominations is evidence that the defendant had possession of it to make change when selling drugs. *See State v. Alexander*, 8th Dist. Cuyahoga No. 90509, 2009-Ohio-597, ¶ 28, citing *State v. Painson*, 9th Dist. Summit No. 24164, 2008-Ohio-6623 ("[e]ven money can be a criminal tool if there is evidence that the currency was in small denominations for making change"). In *State v. Larios*, 8th Dist. Cuyahoga No. 83507, 2004-Ohio-5730, we explained:

> In cases in which this court has upheld a conviction for possession of money deemed to be a criminal tool, this court has also consistently found additional evidence of at least one of the following: that the defendant was caught in the act of selling drugs; he was also in possession of a pager which is a known tool for selling drugs, *State v. Burnett*, 8th Dist. Cuyahoga No. 70618, 1997 Ohio App. LEXIS 1105 (Mar. 20, 1997); he was in possession of marked bills used by a confidential informant to purchase drugs, *State v. Giles*, 8th Dist. Cuyahoga No. 69367, 1996 Ohio App. LEXIS 1800 (May 2, 1996); he was in possession of currency in small denominations to facilitate making change to customers[,] *State v. Alicea*, 8th Dist. Cuyahoga No. 66411, 1994 Ohio App. LEXIS 5155 (Nov. 17, 1994), *State v. Jimenez*, 8th Dist. Cuyahoga No. 73804, 1998 Ohio App. LEXIS 5574 (Nov. 25, 1998) (in which defendant had $940 consisting of six $50 bills, thirty $20 bills, and four $10 bills).

*Id*. at ¶ 28.

{¶ 31} While no drugs were found in the Silverado or on Stubbs's person when Stubbs was arrested, he was in possession of a large amount of money and two cell phones. Although pagers used to be a known tool for selling drugs (according to

*Larios*), cell phones are more common now. *See State v. Perry*, 8th Dist. Cuyahoga No. 105501, 2018-Ohio-487, ¶ 20 (cell phones and money are considered "tools of the trade" for drug traffickers); *State v. Hawthorne*, 8th Dist. Cuyahoga No. 102689, 2016-Ohio-203, ¶ 21 ("It has long been established that otherwise innocuous objects such as bags, money, or cell phones can be used as criminal tools in drug trafficking and these items may constitute circumstantial evidence for drug trafficking.").

{¶ 32} Further, Stubbs's sister, Alice Wadee, who had been a passenger in the Silverado during the attempted takedown, was found walking near the home on Willowdale Avenue with 94 grams of heroin, fentanyl, and another Schedule II drug on her person. Wadee also had a powdery substance all over her clothes because she had attempted to dispose of the drugs when she realized that police officers were approaching her.

{¶ 33} The police officers also searched the Willowdale home and found several kinds of drugs, a digital scale, and packaging material. Detective Lombardi testified that he saw Stubbs going in and out of the Willowdale home several times, that he received mail at the home, parked two vehicles at the home, and had a key to the home in his possession when he was arrested. Although the jury found Stubbs not guilty of the charges relating to the Willowdale home, we "must review '*all of the evidence*' admitted at trial" when determining whether the evidence was sufficient. (Emphasis sic.) *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 18. In doing that here, we conclude that the evidence connecting Stubbs to the Willowdale home, along with all the other evidence in this case, establishes that

Stubbs was selling drugs and intended to use the money found in his possession to carry out that criminal purpose.

{¶ 34} We therefore conclude that the state presented sufficient evidence in this case for a jury to find beyond a reasonable doubt that Stubbs intended to use the money found in his possession to sell drugs.

**C. Vandalism**

{¶ 35} Stubbs further argues that the state failed to present sufficient evidence of vandalism under Count 13. R.C. 2909.05(B)(2) makes it a crime to knowingly cause serious physical harm to property owned by a governmental entity. R.C. 2909.05(F)(2). Stubbs contends that the evidence was insufficient to prove that he acted knowingly and to establish that there was serious physical harm to government property.

1. Knowingly

{¶ 36} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Stubbs argues that the evidence is just as likely that he and his passenger, Alice Wadee, believed that they were being robbed during the attempted takedown. Even if that is true, that is an argument for manifest weight of the evidence, not sufficiency of the evidence. The state presented evidence that two police takedown vehicles pulled behind and in front of the Silverado. Although they were not marked police vehicles, they did have their red

and blue lights flashing on the dashboards. The officers jumped out of their vehicles and ordered the occupants out of the Silverado. Detective Meyers said that the driver and passenger refused to comply and then the driver put the Silverado into reverse, and "smashed into the zone car behind him to make some room, and then pulled off." When the police stopped the truck a short time later, Stubbs was driving. This evidence, if believed, is sufficient to find that Stubbs acted knowingly.

2.    Serious Physical Harm

{¶ 37} "Serious physical harm" is defined as "physical harm to property that results in loss to the value of the property of one thousand dollars or more." R.C. 2909.05(F)(2). Stubbs argues that the state failed to present any evidence as to the value of loss.

{¶ 38} Detective Meyers said that after he parked his takedown vehicle behind the Silverado and ordered the occupants of the truck out of it, Stubbs and his sister refused to comply. Instead, according to Detective Meyers, Stubbs put the Silverado into reverse and "smashed into the zone car behind him to make some room, and then pulled off." Detective Meyers further testified that "it was a sad day, because [the Dodge Charger] was a brand new takedown car * * * [with only] 1,500 miles on it at the time and it was * * * banged up pretty bad." He identified four photos showing the damage to the takedown vehicle. The state claims that the photos were sufficient for the jury to use their common knowledge and experience to determine that the damage to the vehicle exceeded $1,000.

{¶ 39} R.C. 2909.11(A) provides, "When a person is charged * * * with a violation of section 2909.05 of the Revised Code involving property value or an amount of physical harm of one thousand dollars or more, the jury or court trying the accused shall determine the value of the property or amount of physical harm[.]" However, "it is unnecessary to find or return the exact value or amount of physical harm[.]" *Id*. R.C. 2909.11(B)(2) provides in relevant part that "the following criteria shall be used in determining the value of property or amount of physical harm involved in a violation" of R.C. 2909.05: "If the * * * physical harm is such that the property can be restored substantially to its former condition, the amount of physical harm involved is the reasonable cost of restoring the property."

{¶ 40} In this case, the state did not present any direct evidence to establish the cost of repairing the Dodge Charger. Nonetheless, we conclude that a rational trier of fact could have reasonably inferred from the facts presented that the cost to repair the takedown vehicle was more than $1,000. Again, the jurors did not have to determine the exact value of the damage — just that it was over $1,000. We have independently reviewed the four photos showing the damage to the front right section of the takedown vehicle. The photos show damage above and below the front grill of the vehicle as well as damage to the grill itself and the metal surrounding the grill. The photos also show damage to the front right panel and to the right bumper. Based on the damage to several sections of the takedown vehicle, we find that rational jurors could determine from these photos that the cost to repair the vehicle was $1,000 or more.

**{¶ 41}** The facts in this case are similar to the facts in *State v. Williams*, 2d Dist. Clark No. 2005CA106, 2006-Ohio-4653. In *Williams*, the defendant was charged with vandalism under R.C. 2909.05(B)(2) and argued as Stubbs does that the state did not present sufficient evidence of serious physical harm. The state did not present direct evidence of the cost to repair the unmarked police vehicle but did submit photos that showed damage to the right rear door and wheel well. The Second District explained that the photos "indicated a sizable dent on the lower portion of the right rear door and the front part of the wheel well, as well as damage to the paint in those areas." *Id.* at ¶ 24. The Second District concluded that although the officer did not testify at trial how much the repairs would cost, the "jury could have reasonably concluded, upon review of the photographs, that the damage to the vehicle would require a substantial amount of money [$500 or more[4]] to repair." *Id.* at ¶ 24. Based on Detective Meyers's testimony in this case regarding the damage and our own independent review of the photos, we conclude that a rational trier of fact could determine that the damage to the Dodge Charger was more than $1,000.

**{¶ 42}** We, therefore, overrule Stubbs's first assignment of error.

### III. Manifest Weight of the Evidence

**{¶ 43}** In his second assignment of error, Stubbs contends that his convictions are against the manifest weight of the evidence. While the test for

---

[4] The General Assembly amended the definition of serious physical harm set forth in R.C. 2909.05(F)(2) in September 2011 from $500 of loss of value to property to $1,000 of loss of value to property. 2011 Am.Sub.H.B. No. 86.

sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541. While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. When a defendant argues his or her conviction is against the manifest weight of the evidence, the court,

> "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 44} Stubbs argues that the weight of credible evidence supporting his convictions related to January 19, 2021 — Counts 1 through 3 — did not support the jury's verdict. According to Stubbs, the state's evidence "was simply a 'trust me that we have the right guy' theory." He contends, inter alia, that the CI was not credible because the CI could not remember the name of the person who sold the drugs to him on January 19, 2021, and could not identify the defendant in court. Further,

Stubbs points to the fact that the CI's testimony describing the seller as having hair and being "heavyset" did not match Stubbs's appearance in court (according to the CI's testimony, Stubbs was bald and thinner at the time of trial).

{¶ 45} We disagree that Stubbs's convictions for Counts 1 through 3 were against the manifest weight of the evidence. The trial began in March 2023, over two years after the CI purchased drugs from Stubbs. Stubbs could have shaved his head and lost weight from the time of the drug purchase to the time of trial. Moreover, Detective Lombardi showed the CI a BMV photo of Stubbs in January 2021, soon after the CI purchased drugs from Stubbs when the CI's memory about the transaction would have been better, and the CI identified Stubbs as the man who sold him the drugs.

{¶ 46} Stubbs further contends that his convictions relating to Counts 11 through 13 were also against the manifest weight of the evidence.

{¶ 47} Count 11 involved the plastic bag of white residue, later confirmed to be cocaine, that Sergeant Nycz found near the Silverado after Stubbs got in the truck and drove down Blackwell Avenue. Stubbs argues that the plastic bag could have just as easily been his passenger's bag, especially because she was found to have drugs on her when the police stopped her walking near the Willowdale home. We disagree. Sergeant Nycz testified that he found the plastic bag where Stubbs had just walked to get back to the Silverado and drive away. Detective Nycz further testified that the plastic bag was dry, indicating that it was freshly dropped because the ground was wet.

{¶ 48} Count 12 involved possession of criminal tools, i.e., the $4,264 found in Stubbs's possession when he was stopped by the police and arrested. Regarding the money, Stubbs makes the same arguments that he did for sufficiency of the evidence. He contends that because the state failed to present sufficient evidence of possession of criminal tools, the jury lost its way in convicting him of this count. We disagree. When viewing the evidence that we previously set forth for purposes of manifest weight of the evidence, we conclude that the jury did not lose its way when it found Stubbs guilty of possession of criminal tools.

{¶ 49} Count 13 involved vandalism. Again, Stubbs mostly makes the same arguments that he made for sufficiency of the evidence. But he does maintain here that the evidence establishes that he and his sister, Wadee, who was a passenger in his truck at the time of the attempted takedown, believed they were being robbed. He points out that Wadee testified that she had the same belief. He further claims that due to the "much larger Silverado, it is unclear whether [he] actually saw the dashboard lights that police testified they had activated." We disagree. Although Stubbs's version of the events is possible, so is the police officers' version. And after independently weighing the evidence, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice when it found Stubbs guilty of vandalism.

{¶ 50} Having thoroughly reviewed the trial transcript, weighing all the evidence and reasonable inferences, and considering the credibility of witnesses, we are unable to conclude that the jury clearly lost its way when finding Stubbs guilty

of Counts 1 through 3 and 11 through 13. Stubbs's second assignment of error is overruled.

## IV. Forfeiture

{¶ 51} In his third assignment of error, Stubbs raises two issues with respect to forfeiture: he argues that (1) the trial court failed to properly instruct the jury regarding the state's burden, and (2) the state failed to present evidence to support a forfeiture finding in this case.

### A. Jury Instructions

{¶ 52} Stubbs contends that the trial court improperly instructed the jury on the state's burden when proving forfeiture. We agree but find the error to be harmless.

{¶ 53} Whether jury instructions correctly state the law is a legal issue that an appellate court reviews de novo. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 135. "'A reviewing court may not reverse a conviction in a criminal case due to jury instructions unless it is clear that the jury instructions constituted prejudicial error.'" *State v. Shepherd*, 8th Dist. Cuyahoga No. 102951, 2016-Ohio-931, ¶ 25, quoting *State v. McKibbon*, 1st Dist. Hamilton No. C-010145, 2002-Ohio-2041, ¶ 27.

{¶ 54} At the outset, we note that Stubbs failed to object to the trial court's jury instruction regarding the state's burden to prove forfeiture. Stubbs has therefore forfeited all but plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. Under Crim.R. 52(B), "plain errors or defects

affecting substantial rights may be noticed although they were not brought to the attention of the court." To reverse a trial court under Crim.R. 52(B), three prongs must be met: (1) there must be an error, (2) it must be "plain" within the meaning of Crim.R. 52(B); i.e., it must be an obvious defect in the trial proceedings, and (3) the error must have affected the defendant's "substantial rights." *State v Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). The third prong means that the trial court's error must have affected the outcome of the trial. *Id.* And even if an offender demonstrates that the trial court committed plain error that affected the proceeding, "an appellate court is not required to correct it." *Rogers* at ¶ 23. Plain error is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*, citing *Barnes* at 27.

{¶ 55} The General Assembly amended R.C. 2981.04(B) in April 2017. *See* 2016 Am.Sub.H.B. No. 347; *State v. Howard*, 8th Dist. Cuyahoga No. 105327, 2017-Ohio-8734, ¶ 3, fn. 1. R.C. 2981.04(B) now provides that a trier of fact shall return a verdict of forfeiture if the state "proves by clear and convincing evidence that the property is in whole or part subject to forfeiture under section 2981.02 of the Revised Code." The prior version of the statute required the state to prove by a preponderance of the evidence that property was subject to forfeiture. *Howard* at ¶ 3.

{¶ 56} Here, the trial court instructed the jurors that if they found Stubbs guilty of any offense charged in Counts 5 through 12, then they must "determine whether the state has proved by a preponderance of the evidence its claim that the

defendant's" property is subject to forfeiture. After describing the forfeiture specifications, the trial court defined preponderance of the evidence for the jury, stating:

> Preponderance of the evidence is the greater weight of the evidence; that is, evidence you believe outweighs or overbalances in your mind the evidence that goes to it. Preponderance of the evidence that is more probable, more persuasive or of greater probative value. It is the quality of the evidence that must be weighed. Quality may or may not be identical with the quantity or greater number of witnesses or evidence. In determining whether an issue has been proved by a preponderance of the evidence, you should consider all the evidence bearing upon that issue or affirmative defense regardless of who produced it. If the weight of the evidence is equally balanced or if you are unable to determine which side of an issue has the preponderance then the * * * state has not established such issue.

{¶ 57} Clear and convincing evidence, however, is that which will produce in the trier of fact "'a firm belief or conviction as to the facts sought to be established.'" *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Clear and convincing evidence is a higher standard than a preponderance of the evidence. *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994).

{¶ 58} The trial court erred when it instructed the jury that the state's burden was preponderance of the evidence. Nonetheless, we find the error to be harmless because as we discuss in the following subsection, even under the higher standard, the state met its burden.

## B. Evidence of Forfeiture

{¶ 59} Stubbs contends that the state failed to meet its burden to warrant a forfeiture finding under either a preponderance of the evidence or clear and convincing standard. We disagree.

{¶ 60} R.C. 2981.04(B) requires the state to prove by clear and convincing evidence that the subject property was subject to forfeiture under R.C. 2981.02. R.C. 2981.02(A)(1)(a)-(c) specifies three kinds of property that may be forfeited to the state: (1) contraband involved in an offense, (2) proceeds derived from or acquired through the commission of an offense, or (3) an instrumentality that is used in or intended to be used in the commission or facilitation of a felony. Thus, the state had to prove by clear and convincing evidence that the money and cell phone were used in the commission of a criminal offense.

{¶ 61} The state presented evidence in this case connecting Stubbs to the Willowdale home, where the police found large amounts of drugs. The police found mail addressed to Stubbs in the trash on the curb of the Willowdale home and inside the home when they executed the search warrant. Stubbs also had a key to the Willowdale home on his person when he was arrested, which the police used to enter the Willowdale home to execute the search warrant.

{¶ 62} Detective Lombardi testified that Stubbs was driving the Silverado when he sold the drugs to the CI at the first controlled purchase on January 19, 2021. Detective Lombardi observed the CI enter the Silverado with Stubbs and exit alone

after approximately 15 seconds. The CI identified Stubbs as the person who sold him the drugs from a BMV photo.

{¶ 63} After the first controlled buy, the police followed Stubbs to the Willowdale home, where they saw Stubbs park the truck and enter the home. The police subsequently conducted surveillance on the Willowdale home and observed Stubbs enter and exit the home several times. The police also observed Stubbs driving the Silverado to and from the home as well as a Jeep that was parked on the street near the home.

{¶ 64} On January 28, 2021, the day that Stubbs was arrested, Detective Lombardi had the CI call Stubbs at the phone number that Stubbs had given the CI to make future drug purchases. The CI and Stubbs scheduled a time to meet at the same convenience store where the first controlled purchase had taken place. The Silverado arrived at the Wendy's across the street from the convenience store just before the second controlled purchase was scheduled to occur. Stubbs was driving the Silverado at the time of the attempted takedown.

{¶ 65} After Stubbs drove away from the gas station, he parked the Silverado in the driveway of a house on Bradwell Avenue. Detective Nycz found a plastic bag containing cocaine residue near where the Silverado had been parked and where Stubbs had just walked to get in the truck. Soon after, the police arrested Stubbs with the money and cell phone in his possession.

{¶ 66} After reviewing the evidence presented at trial, we conclude that the state proved by clear and convincing evidence that Stubbs used the money and cell phone to commit drug trafficking.

{¶ 67} Stubbs's third assignment of error is overruled.

## V. Admission of Gun Evidence

{¶ 68} In his fourth assignment of error, Stubbs argues that the trial court erred over his objection when it permitted the state to admit evidence of a gun, specifically an AK-47 rifle, that the police found in the basement of the Willowdale home when he was not indicted on a crime involving the rifle and there was no evidence that he possessed or even knew about the rifle. Stubbs contends that this evidence was "completely irrelevant" and significantly prejudicial.

{¶ 69} Evid.R. 404(B) precludes evidence of other acts "to prove the character of a person in order to show action in conformity therewith." In *State v. Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, 92 N.E.3d 821, the Ohio Supreme Court warned that other-weapons evidence — i.e., irrelevant evidence of weapons unrelated to the charges — falls within the scope of Evid.R. 404(B).

{¶ 70} Evid.R. 403 also prohibits the admission of prejudicial evidence even if it is relevant. Evid.R. 403(A) provides that "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice[.]"

{¶ 71} "Error in admitting other weapons evidence falls generally into one of two categories: harmless error or prejudicial error requiring reversal." *Thomas* at ¶ 38. "If a court determines that the error did not affect the defendant's substantial

rights, then the error is harmless and shall be discarded." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 23; Crim.R. 52(B). "Cases in which courts have deemed error in the admission of other weapons evidence to be harmless generally involved overwhelming independent evidence of guilt." *Thomas* at ¶ 39. Based on our discussion set forth previously regarding manifest weight of the evidence, we find that the evidence of Stubbs's guilt in this case to be overwhelming.

{¶ 72} Moreover, even if the trial court erred in admitting the evidence of the gun found in the rafters of the basement of the Willowdale home, we find the admission of that evidence was not prejudicial to Stubbs for another reason. The jury heard testimony regarding all the evidence the police found in the Willowdale home, including evidence of fentanyl, heroin, and large amounts of PCP in the trash can outside the home. The jury was clearly not confused, misled, or inflamed by the evidence. Indeed, the jurors found Stubbs guilty only of the offenses that were unrelated to the Willowdale home. Therefore, we conclude that the admission of evidence regarding the rifle did not prejudice Stubbs.

{¶ 73} Accordingly, we overrule Stubbs's fourth assignment of error.

## VI. Allied Offenses

{¶ 74} In his fifth assignment of error, Stubbs argues that the trial court erred when it failed to merge Counts 1, 2, and 3 for purposes of sentencing. Count 1 charged trafficking cocaine under R.C. 2925.03(A)(1) (sell or offer to sell). Count 2 charged trafficking cocaine under R.C. 2925.03(A)(2) (prepare for shipment or

distribution). Count 3 charged possession of cocaine under R.C. 2925.11(A). All three counts stem from one, very brief transaction that took place on January 19, 2021, when Stubbs sold $20 worth of crack cocaine to the CI in the parking lot of the convenience store on January 19, 2021.

{¶ 75} We note at the outset that Stubbs argued at the sentencing hearing that only Count 3 should merge with Counts 1 and 2. The state countered at the sentencing hearing that the offenses did not merge. When sentencing Stubbs, however, the trial court did not mention the issue of allied offenses and sentenced Stubbs on all three convictions. Stubbs did not object when the trial court failed to address the issue of allied offenses.

{¶ 76} Stubbs is now arguing that the trial court should have merged all three counts. But because Stubbs did not raise this argument to the trial court and did not object when the trial court failed to merge any of the counts, he has forfeited all but plain error. *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 21. As we previously stated, a forfeited error is not reversible under the plain error standard "unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *Id.* at ¶ 3. Applying the plain error standard to an allied offenses argument, "an accused has the burden to demonstrate a reasonable probability that the convictions are allied offenses of similar import committed with the same conduct and without a separate animus." *Id.*

{¶ 77} Despite the plain error stand of review applying here, we still must determine de novo whether the offenses are allied offenses of similar import. *State*

*v. Bail*ey, 171 Ohio St.3d 486, 2022-Ohio-4407, 218 N.E.3d 858, ¶ 13, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245. In *Bailey*, although plain error applied because the defendant had not objected to the trial court's failure to merge the offenses, the Supreme Court stated that courts review de novo whether offenses are allied because the question involves "a legal determination premised on the specific facts of [the] case." *Id*. at ¶ 13. We must therefore independently determine whether the offenses in this case should have merged for purposes of sentencing.

{¶ 78} R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, prohibiting multiple punishments for the same offense. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23. Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

> where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B)

{¶ 79} The Ohio Supreme Court made clear that "[a]t its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 26. "'[T]his analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct — an inherently subjective determination.'" *Id.* at ¶ 32, quoting *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52 (plurality opinion per Brown, C.J.). The court further explained:

> Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.

*Id.* at ¶ 30.

{¶ 80} In determining whether offenses are subject to merger for sentencing under R.C. 2941.25, courts evaluate three separate factors — the import, the conduct, and the animus. *Id.* at paragraphs one and three of the syllabus. Offenses do not merge, and a defendant may be convicted of and sentenced for multiple offenses if any one of the following is true: (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus.

{¶ 81} Offenses are dissimilar in import or significance within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 23. Thus, "a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id.* at ¶ 26. "The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import." *Id.*

{¶ 82} Offenses are committed separately within the meaning of R.C. 2941.25(B) if "'one offense was complete before the other offense occurred, * * * notwithstanding their proximity in time and that one [offense] was committed in order to commit the other.'" *State v. Woodard*, 2d Dist. Montgomery No. 29110, 2022-Ohio-3081, ¶ 38, quoting *State v. Turner*, 2d Dist. Montgomery No. 24421, 2011-Ohio-6714, ¶ 24. Thus, "'when one offense is completed prior to the completion of another offense during the defendant's course of conduct, those offenses are separate acts.'" *Id.*, quoting *State v. Mooty*, 2014-Ohio-733, 9 N.E.3d 443, ¶ 49 (2d Dist.).

{¶ 83} For purposes of R.C. 2941.25(B), animus has been defined as "'purpose or more properly, immediate motive.'" *State v. Bailey*, 8th Dist. Cuyahoga No. 100993, 2014-Ohio-4684, ¶ 34, quoting *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). "'If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses.'" *State v. Lane*,

12th Dist. Butler No. CA2013-05-074, 2014-Ohio-562, ¶ 12, quoting *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 13. "Like all mental states, animus is often difficult to prove directly, but [may] be inferred from the surrounding circumstances." *Logan* at 131.

{¶ 84} Stubbs cites *State v. Goodson*, 8th Dist. Cuyahoga No. 94954, 2011-Ohio-5820, and *State v. Parker*, 8th Dist. Cuyahoga No. 99047, 2013-Ohio-3135, in support of his argument that the offenses should merge. In both cases, under very similar facts (defendant sold drugs to a CI), this court held that all three offenses — possession and the same two trafficking charges — merged for purposes of sentencing. *Goodson* at ¶ 13; *Parker* at ¶ 17.

{¶ 85} *Goodson* and *Parker*, however, relied on *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, which predates *Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. The Supreme Court explained in *Ruff* that the law set forth in *Johnson* "was incomplete." *Id.* at ¶ 16. We must therefore determine whether these offenses are allied offenses under the three-part test set forth in *Ruff*.

{¶ 86} We first note that Stubbs did not commit these offenses with a separate animus. Again, all three of the offenses stem from a very brief transaction in the parking lot of the convenience store when Stubbs sold a $20 bag of crack cocaine to the CI on January 19, 2021. Stubbs committed them with a single motive or animus, i.e., to sell crack cocaine.

{¶ 87} Next, we address whether the offenses are dissimilar in import or significance. After reviewing Stubbs's conduct in this case, we conclude that the

offenses are not dissimilar. There was only one victim. The victim of drug trafficking offenses is "society in general." *State v. Bontrager*, 2022-Ohio-1367, 188 N.E.3d 607, ¶ 16 (4th Dist.); *State v. Delgadillo-Banuelos*, 10th Dist. Franklin No. 18AP-729, 2019-Ohio-4174, ¶ 15 (the harm caused by drug trafficking is "only to society in general"); *State v. Martin*, 7th Dist. Columbiana No. 18CO0033, 2020-Ohio3579, ¶ 59 (the victim in drug possession offenses is "society in general"). And the harm that resulted to society from each offense was not "separate and identifiable." *Ruff* at ¶ 23.

{¶ 88} Finally, we must determine whether the offenses were committed separately. Regarding possession and the two trafficking offenses, we conclude that to commit trafficking under either subsection of R.C. 2925.03, Stubbs necessarily had to possess the cocaine. Specifically, Stubbs possessed the cocaine to prepare it for distribution under R.C. 2925.03(A)(2) and then to sell it under R.C. 2925.03(A)(1). There was no evidence that he separately possessed the cocaine for his personal use or for some other reason. Therefore, the offense of possession in Count 3 merges with the two trafficking offenses in Counts 1 and 2, which is what Stubbs argued at the sentencing hearing.[5]

{¶ 89} Regarding the two trafficking offenses, however, we conclude that Stubbs committed them separately, and, therefore, they do not merge for purposes

---

[5] At oral argument, the state conceded that possession merged with the trafficking offenses.

of sentencing. For trafficking under R.C. 2925.03(A)(2), Stubbs knowingly prepared the cocaine to sell it. For trafficking under R.C. 2925.03(A)(2), Stubbs knowingly sold cocaine to the CI. The former was necessarily committed before the latter. *State v. Bradley*, 2015-Ohio-5421, 55 N.E.3d 580, ¶ 40 (8th Dist.) ("Because Bradley's act of selling cocaine to the CI during the buy-bust operation was committed separately from the 'preparation' or 'transportation' of cocaine and heroin with the intent to sell, [trafficking under R.C. 2925.03(A)(1)] does not merge with the remaining trafficking counts [under R.C. 2925.03(A)(2)]."). Therefore, Stubbs's trafficking convictions in Counts 1 and 2 do not merge for purposes of sentencing.

{¶ 90} After review, we conclude that it was plain error for the trial court to sentence Stubbs on possession and the trafficking offenses. The trial court should have merged possession with one of the trafficking offenses. We further find that Stubbs was prejudiced by the trial court's error because although he received concurrent sentences for the offenses, he was still convicted of three offenses. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12 ("[A] 'conviction' consists of a guilty verdict *and* the imposition of a sentence or penalty." (Emphasis sic.)).

{¶ 91} Accordingly, we sustain Stubbs's fifth assignment of error in part and reverse it in part. We remand for resentencing for the state to elect which offense (possession or trafficking under either subsection) to pursue at sentencing.

**{¶ 92}** This cause is affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

EILEEN A. GALLAGHER, P.J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR