[Cite as *State v. Sullivan*, 2024-Ohio-5601.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                  :

    Plaintiff-Appellee,                  :

    v.                                            :          No. 113791

DEVONTAE SULLIVAN,                       :

    Defendant-Appellant.               :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 27, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-685393-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mary Ann Zaky, Assistant Prosecuting Attorney, *for appellee*.

Michael P. Maloney, *for appellant*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant, Devontae Sullivan, appeals from his aggravated arson and arson convictions, which were rendered after a jury trial. After a thorough review of the facts and pertinent law, we affirm.

{¶ 2} In October 2023, Sullivan was charged in a four-count indictment relative to the March 2023 car fire of a 2018 Honda Accord that was parked in a driveway adjacent to a house on Arabella Road in Cleveland. Count 1 charged aggravated arson (substantial risk of serious physical harm to victim Leslie Glover, the owner of the vehicle); Count 2 charged aggravated arson (physical harm to the subject house); Count 3 charged arson (substantial risk of physical harm in the amount of $1,000 or more to the owner of the house, victim Larry Minnefee); and Count 4 charged arson (substantial risk of physical harm in the amount of $1,000 or more to victim Glover's vehicle).

{¶ 3} The trial testimony established the following facts. Justice Farmer testified that she and her children and her friend, victim Glover, lived in the house on Arabella Road where the car fire occurred. The house was an up-and-down duplex; Farmer rented the upper unit of the duplex, living there with her children and Glover, and an elderly couple, their son, and grandchild lived in the lower unit. There was a driveway on the right side of the house that ran all the way back to a detached garage on the back of the property. Farmer testified that Glover owned a 2018 Honda Accord, and on the day and time in question, the Honda was parked in the driveway alongside the house.

{¶ 4} According to Farmer, on the evening in question, she and her children walked to a nearby store around 7:30 p.m. As they walked back to the house, Farmer saw someone running out from the back yard. She and her children went inside the house, and she began to prepare dinner. Farmer

testified that she looked out the kitchen window and saw that Glover's car was on fire; Glover was not home at the time. Farmer gathered her children and went outside, where she called 911. One of the downstairs neighbors went outside too and tried to extinguish the fire while waiting for first responders to arrive. The car "exploded," and the fire spread to the house.

{¶ 5} The owner of the home, Larry Minnefee, confirmed that the burned car belonged to Glover and described that in the aftermath of the fire it "was totaled . . . it was burned completely up. Inside and out." Battalion Chief Gregory Lightcap, a 27-year veteran of the Cleveland Division of Fire, corroborated Minnefee's testimony: "[t]he damage to the car was pretty severe. The car was totaled. The burning was on the engine, the outside of the car and some interior of the vehicle." Chief Lightcap "suspected that the fire was purposely started" and referred the case to the fire investigation unit.

{¶ 6} Another first responder, Lieutenant Thomas Candow, testified that "most fire damage to this vehicle was to the hood section . . . it was completely consumed. There was also fire damage to the top section of the vehicle, also to the rear section of the vehicle." According to Lieutenant Candow, it was unusual to have fire burn through a car from the front all the way to the rear lights.

{¶ 7} Cleveland Division of Fire Detective Charles Harris spoke with Glover, who told him she was the owner of the subject car. Detective Harris also spoke with Chief Lightcap at the scene, after which he concluded that the fire started with the car and spread to the house. The detective also concluded that an ignitable liquid,

such as gasoline, had been poured on the vehicle from front to back. The detective admitted that he did not find an ignitable liquid on the scene, but he testified that it would have been possible for the liquid to be burned up and not present afterward.

**{¶ 8}** Cleveland Division of Fire Detective David Baker testified as to how Sullivan was identified as the perpetrator. Surveillance video from a business two doors from the subject house were obtained. The video showed a maroon Buick with tinted windows in the area of the house. Using the City of Cleveland's "Real Time Crime" street cameras, Detective Baker traced the Buick to a gas station located five minutes from the crime scene. The detective was able to obtain a license plate number for the Buick that was registered to a red 1999 Chevrolet Cavalier.

**{¶ 9}** The detective was also able to determine from video footage from the gas station that, at approximately 7:35 p.m., the Buick "met up with" a Jeep Cherokee at the gas station. The driver of the Jeep exited the vehicle and pumped gas into a red gasoline container; while he did, the driver of the Buick got out of his vehicle, walked to the Jeep, and interacted with the Jeep's driver. When the Jeep driver finished pumping his gas, the driver put the gas container in a white garbage bag, put the garbage bag in the back of the Jeep, and drove away; the driver of the Buick drove away at the same time and headed in the same direction of the Jeep.

**{¶ 10}** Video footage from the business by the subject house showed that at approximately 7:55 p.m., the Buick was in the area and a person exited the passenger side of the car carrying a white garbage bag. The person ran toward the subject

house and a "flash" of fire on the driveway side of the house can be seen. The footage then shows a person running back to the Buick with a red gas container in his hand.

{¶ 11} Detective Baker testified that, following multiple investigative leads, several names of suspects emerged, including Sullivan. Using law enforcement databases, the detective obtained driver license photographs of the suspects. He compared the photos to the video footage and determined that Sullivan was the person pumping the gas into the container and running to and from the subject house.

{¶ 12} After the State rested its case, the defense moved for a Crim.R. 29 motion for judgment of acquittal as to all counts. After discussion, the State dismissed Count 1; the trial court denied the Crim.R. 29 motion on the remaining counts. The defense did not present any witnesses. After its deliberations, the jury found Sullivan guilty on the remaining counts. The trial court sentenced Sullivan to an aggregate prison term of four to six years. In this appeal, Sullivan raises the following three assignments of error for our review:

I.     The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal on all counts where there was insufficient evidence to prove identity.

II.     The trial court erred in denying appellant's Rule 29 motion as to Count 4, where the State presented insufficient evidence of ownership or value of the damage caused by the fire.

III.     The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal on all counts where there was insufficient evidence to prove the cause of the fire.

{¶ 13} All three of Sullivan's assignments of error challenge the sufficiency of the State's evidence. When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, (1991), paragraph two of the syllabus. The court examines all the evidence admitted at trial to determine whether such evidence, if believed, would convince a reasonable factfinder of the defendant's guilt beyond a reasonable doubt. *State v. Williams*, 2023-Ohio-2296, ¶ 81 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring); *see also State v. Bankston*, 2009-Ohio-754, ¶ 4 (10th Dist.) (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the State's witnesses testified truthfully and determines if that testimony satisfies each element of the crime"). Whether the evidence is legally sufficient to support a verdict is a question of law. *Thompkins* at 386.

{¶ 14} In his first assignment of error, Sullivan contends that the State failed to present sufficient evidence of identity. We disagree.

{¶ 15} "The identity of a perpetrator must be proved by the State beyond a reasonable doubt." *State v. Dumas*, 2021-Ohio-1534, ¶ 7 (9th Dist.). "Like any other element of an offense, identity may be established through direct or circumstantial evidence." *State v. Jackson*, 2017-Ohio-635, ¶ 7 (9th Dist.). "Circumstantial

evidence and direct evidence inherently possess the same probative value[.]" *Jenks* at paragraph one of the syllabus.

{¶ 16} Detective David Baker identified Sullivan as the perpetrator. He viewed surveillance video from a business two doors from the subject house. The video showed a maroon Buick with tinted windows in the area. Using the City of Cleveland's "Real Time Crime" street cameras, Detective Baker traced the Buick to a gas station located five minutes from the crime scene. The detective was able to obtain a license plate number for the Buick that was registered to a red 1999 Chevrolet Cavalier.

{¶ 17} The detective was also able to determine from video footage from the gas station that, at approximately 7:35 p.m., the Buick "met up with" a Jeep Cherokee at the previously mentioned gas station. The driver of the Jeep exited the vehicle and pumped gas into a red gasoline container; while he did, the driver of the Buick got out of his vehicle, walked to the Jeep, and interacted with the Jeep's driver. When the Jeep driver finished pumping his gas, the driver put the gas container in a white garbage bag, put the garbage bag in the back of the Jeep, and drove away; the driver of the Buick drove away at the same time and headed in the same direction of the Jeep.

{¶ 18} Video footage from the business by the subject house showed that at approximately 7:55 p.m., the Buick was in the area and a person exited the passenger side of the car carrying a white garbage bag. The person ran toward the subject

house, and a "flash" of fire on the driveway side of the house can be seen. The footage then shows a person running back to the Buick with a red gas container in his hand.

{¶ 19} Detective Baker testified that, following multiple investigative leads, several names of suspects emerged, including Sullivan. Using law enforcement databases, the detective obtained driver license photographs of the suspects. He compared the photos to the video footage and determined that Sullivan was the person pumping the gas into the container and running to and from the subject house.

{¶ 20} Detective Baker positively identified Sullivan in court as the person in the driver license photo, as well as the person on the surveillance footage. The license photo and surveillance videos were shown to the jury and admitted into evidence; thus, the State presented sufficient evidence for the jury to determine whether Sullivan was the perpetrator.

{¶ 21} On this record, the State presented sufficient evidence of identity. The first assignment of error is overruled.

{¶ 22} For his second assignment of error, Sullivan contends that, because Glover did not testify and no certificate of title or registration was presented, the State failed to present sufficient evidence of ownership of the burned Honda. He also contends that the State failed to present sufficient evidence that the 2018 Honda was valued at $1,000 or more.

{¶ 23} Regarding ownership, three witnesses testified that Glover owned the Honda: Farmer, who lived with Glover; Minnefee, the owner of the Arabella Road

house; and Detective Harris, who spoke with Glover after the fire. On this record, the State presented sufficient evidence that Glover owned the Honda. *See Cleveland v. Cao*, 2009-Ohio-488, ¶ 25-26 (8th Dist.) (the city did not have to present a car title to prove ownership; the testimony of the victim's brother was sufficient evidence of ownership).

{¶ 24} Regarding the value of the Honda, the State presented testimony from several witnesses that the car was "totaled." The State also submitted into evidence photographs of the car after the fire — the photographs corroborated that the car was "totaled."

{¶ 25} In *State v. Stubbs*, 2024-Ohio-839 (8th Dist.), this court held that the State presented sufficient evidence of vandalism to a vehicle despite the lack of direct evidence of the cost to repair it. *Id.* at ¶ 40. The court noted that "a rational trier of fact could have reasonably inferred from the facts presented that the costs to repair the takedown vehicle was more than $1,000." *Id.* The *Stubbs* panel "independently reviewed the [admitted] photos" to see the damage to the vehicle and concluded that "rational jurors could determine from these photos that the cost to repair the vehicle was $1,000 or more." *Id.*

{¶ 26} Likewise, here, we have reviewed the admitted photos and agree with the testimonies that Glover's car was "totaled." On this record, the jury could reasonably infer that $1,000 or more of damage was done to the 2018 Honda.

{¶ 27} The second assignment of error is overruled.

{¶ 28} In his final assignment of error, Sullivan contends that evidence was insufficient to support the convictions as to all three counts, because the State failed to prove that the fire was intentionally set. Again, we disagree.

{¶ 29} Chief Lightcap, a firefighter with the Cleveland Division of Fire for over 27 years, testified that he "suspected that the fire was purposely started" and referred the case to the fire investigation unit. Detective Harris, a 15-year veteran of the Cleveland Division of Fire and investigator in the fire investigation unit responded to the scene after the fire. After consulting with Chief Lightcap, Detective Harris determined that the fire's point of origin was Glover's vehicle and the fire spread to the house. Based on the totality of the circumstances, including the scorching of the vehicle and the burn pattern, the detective concluded that an ignitable liquid, such as gasoline, was poured on the vehicle from front to back.

{¶ 30} Another veteran member of the Cleveland Division of Fire and member of the fire investigation unit, Lieutenant Candow, responded to the scene after the fire and consulted with Detective Harris. The lieutenant testified that he believed the fire was intentionally set because it was not a "clean" burn that would have resulted from an engine fire.

{¶ 31} On this record, the State presented sufficient evidence to support Sullivan's convictions. The third assignment of error is therefore overruled.

{¶ 32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

EILEEN T. GALLAGHER, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)